**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                   :
                                               :
              Plaintiff,              :   Civil Action No. 23-cv-1393
                                               :
v.                                             :   **COMPLAINT FOR VIOLATIONS OF**
                                               :   **SECTIONS 14(a) AND 20(a) OF THE**
DUCK CREEK TECHNOLOGIES, INC.,                 :   **SECURITIES EXCHANGE ACT OF**
WILLIAM BLOOM, KATHLEEN CRUSCO,                :   **1934**
JULIE DODD, MICHAEL JACKOWSKI,                 :
TALVIS LOVE, ROY MACKENZIE,                    :   **JURY TRIAL DEMANDED**
STUART D. NICOLL, FRANCIS PELZER,              :
SUNIL RAJASEKAR, and JASON WRIGHT,             :
                                               :
              Defendants.             :

--------------------------------------------------------

       Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

       1.      This is an action brought by Plaintiff against Duck Creek Inc. ("Duck Creek or the

"Company") and the members Duck Creek's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Duck Creek by affiliates of Vista Equity Partners Management, LLC

("Vista").

       2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on February 16, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Disco Merger Sub, Inc. ("Merger Sub"), a wholly owned direct subsidiary of Disco Parent, LLC ("Parent"), will merge with and into Duck Creek with Duck Creek becoming s wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on January 8, 2023 (the "Merger Agreement"), each Duck Creek stockholder will receive $19.00 in cash (the "Merger Consideration") for each Duck Creek share owned. M\erger Sub and Parent are both affiliates of Vista.

3.      As discussed below, Defendants have asked Duck Creek's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore Group L.L.C. ("Evercore" and together with J.P. Morgan, the "Financial Advisors") in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Duck Creek's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Duck Creek stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant William Bloom has served as a member of the Board since October 2021.

11.     Individual Defendant Kathleen Crusco has served as a member of the Board since February 2020.

12.     Individual Defendant Julie Dodd has served as a member of the Board since January 2021.

13.     Individual Defendant Michael Jackowski has served as a member of the Board since August 2016 and is the Company's Chief Executive Officer.

14.     Individual Defendant Talvis Love has served as a member of the Board since October 2022.

15.     Individual Defendant Roy Mackenzie has served as a member of the Board since April 2016.

16.     Individual Defendant Stuart Nicoll has served as a member of the Board since August 2016.

17.     Individual Defendant Francis Pelzer has served as a member of the Board since March 2019.

18.     Individual Defendant Sunil Rajasekar has served as a member of the Board since June 2022.

19.     Individual Defendant Jason Wright has served as a member of the Board since April 2016 and is the Chairman of the Board.

20.     Defendant Duck Creek is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 22 Boston Wharf Road, Boston, MA 02210. The Company's stock trades on the NASDAQ Global Select Market under the symbol "DCT."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.    <u>The Proposed Transaction</u>

23.     Duck Creek provides software-as-a-service core systems to the property and casualty insurance industry in the United States and internationally. The Company provides Duck Creek Policy, a solution that enables insurers to develop and launch new insurance products and

manage various aspects of policy administration ranging from product definition to quoting, binding, and servicing; Duck Creek Billing that provides payment and invoicing capabilities, such as billing and collections, commission processing, disbursement management, and general ledger capabilities for insurance lines and bill types; and Duck Creek Claims that supports entire claims lifecycle from first notice of loss through investigation, payments, negotiations, reporting, and closure. It also offers Duck Creek Rating that allows carriers to develop new rates and models and deliver quotes in real-time based on the complex rating algorithms; Duck Creek Insights, an insurance analytics solution that allows carriers to gather and analyze data from internal and external sources and facilitate analysis and reporting on a single system; Duck Creek Digital Engagement that offer digital interactions between property and casualty insurers and their agents, brokers, and policyholders; and Duck Creek Distribution Management that automates sales channel activities for agents and brokers, including producer onboarding, compliance, and compensation management. In addition, the Company provides Duck Creek Reinsurance Management that automates financial and administrative functions; and Duck Creek Industry Content that provides pre-built content, including base business rules, product designs, rating algorithms, data capture screens, and workflows for insurance lines of business, such as commercial auto, inland marine, and workers compensation. It has a partnership with Shift Technologies, Inc. to implement AI fraud detection. The Company was founded in 2016 and is based in Boston, Massachusetts.

24. On January 9, 2023, the Company announced the Proposed Transaction:

BOSTON, Jan. 09, 2023 (GLOBE NEWSWIRE) -- Duck Creek Technologies (NASDAQ: DCT), the intelligent solutions provider defining the future of property and casualty (P&C) insurance, today announces it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data and technology-

enabled businesses, for $19.00 per share, in an all-cash transaction valued at approximately $2.6 billion.

Under the terms of the agreement, Duck Creek shareholders will receive $19.00 per share in cash, which represents a 46% premium to Duck Creek's closing stock price on January 6, 2023, the last full trading day prior to the transaction announcement, and a premium of approximately 64% over the volume weighted average price of Duck Creek's stock for the 30 days ending January 6, 2023.

"This transaction is a testament to the value of the Duck Creek platform, the success of our strategy and the strength of our incredible team. Following a deliberate and thoughtful process, the Board approved this transaction which delivers a great outcome for Duck Creek's shareholders, providing them a certain and substantial cash value at an attractive premium," said Michael Jackowski, Chief Executive Officer of Duck Creek. "Duck Creek is proud to have pioneered cloud-based mission-critical systems for the P&C insurance industry to deliver a best-in-class customer experience. We are excited to enter the next chapter for Duck Creek in partnership with Vista Equity Partners to continue supporting P&C insurance carriers' move to the cloud."

"Duck Creek is playing an outsized role in accelerating cloud strategies and unlocking all the advantages they provide this crucial sector of today's economy," said Monti Saroya, Senior Managing Director and Co-Head of Vista's Flagship Fund. "Duck Creek's modern cloud architecture and demonstrated market traction position it to define the next generation of mission-critical technology for P&C insurance."

"Vista has an established track record of partnering with leading enterprise software businesses within the insurance industry and related verticals," said Jeff Wilson, Managing Director at Vista. "We are excited to work with the Duck Creek team as we look to build on their best-in-class platform and solutions, which serve many of the world's leading P&C insurance carriers."

**Certain Terms, Approvals and Timing**

Transaction negotiations were led by a Special Committee of the Duck Creek Board of Directors, composed entirely of independent and disinterested directors. Following the recommendation of the Special Committee, the Duck Creek Board of Directors approved the merger agreement with Vista Equity Partners.

The transaction is expected to close in the second calendar quarter of 2023, subject to the satisfaction of customary closing conditions, including approval by Duck Creek's stockholders and U.S. antitrust clearance. Upon completion of the transaction, Duck Creek's common stock will no longer be publicly listed, and Duck Creek will become a privately held company. Vista Equity Partners intends to finance the transaction with fully committed equity financing that is not subject to any financing condition.

The agreement includes a "go-shop" period expiring at 11:59 p.m. Eastern time on February 7, 2023, which allows Duck Creek's board of directors and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties. Duck Creek's board of directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Duck Creek does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or otherwise required.

**Advisors**

J.P. Morgan is acting as financial advisor to Duck Creek, and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel to Duck Creek.

Evercore is acting as financial advisor to the Special Committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to the Special Committee.

Kirkland & Ellis LLP is acting as legal counsel to Vista Equity Partners.

* * *

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Duck Creek's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**      **The Materially Incomplete and Misleading Proxy Statement**

26.      On February 16, 2023, Duck Creek filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

_Omissions and/or Material Misrepresentations Concerning Financial Projections_

27.      The Proxy Statement fails to provide material information concerning financial projections by Duck Creek management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Duck Creek management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." _In re Netsmart Techs., Inc. S'holders Litig._, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP

(Generally Accepted Accounting Principles) financial metric: Non-GAAP Gross Margin, Adjusted

EBITDA, Unlevered Free Cash Flow pre-NOLs, and Unlevered Free Cash Flow post-NOLs, but

fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP

metrics to their most comparable GAAP measures, in direct violation of Regulation G and

consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement

that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates,

also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April
4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected by J.P. Morgan for the analysis.

33.     With respect to J.P. Morgan's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis.

34.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates ranging from 3.5% to 4.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 9.25% to 10.25%; and (iv) the weighted cost of capital of the Company.

35.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates ranging from 4.0% to 6.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (iv) the weighted cost of capital of the Company; (v) the basis for assuming a 22% tax rate in the second, third, and fourth quarters of the Company's fiscal year 2023 and a 24% tax rate in all fiscal years thereafter; (vi) the Company's

net debt as of November 30, 2022; and (vii) the number of fully diluted shares outstanding of Company common stock.

36.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected by Evercore for the analysis.

37.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected by Evercore for the analysis.

38.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts observed; and (ii) the public market trading price targets for the shares of Duck Creek common stock prepared and published by the equity research analysts.

39.     With respect to Evercore's *Illustrative Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose: (i) the range of implied enterprise values of the Company; (ii) the inputs and assumptions underlying the range of total enterprise value to NTM Revenue multiples of 3.5-6.5x; (iii) the inputs and assumptions underlying the discount rate of 12%; (iv) the Company's weighted cost of capital; (v) the Company's net debt; and (vi) the number of fully diluted shares of Duck Creek common stock.

40.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the premiums paid for the 15 transactions selected by Evercore for the analysis.

41.     With respect to Evercore's *Leveraged Buyout Analysis*, the Proxy Statement fails to disclose: (i) the basis for assuming (a) a 15.0-25.0% required rate of return for the leveraged buyout ("LBO") acquirer; (b) a holding period of 5.75 y ears; (c) an exit multiple of 4.5-6.5x NTM

Revenue; and (d) assumed leverage equal to 2.0x estimated average recurring revenue as of February 28, 2023.

42.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial

projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

48.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Duck Creek within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Duck Creek, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Duck Creek, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Duck Creek, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

53.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: February 17, 2023                           **MELWANI & CHAN LLP**

By:    */s/ Gloria Kui Melwani*
      Gloria Kui Melwani (GM5661)
      1180 Avenue of the Americas, 8th Fl.
      New York, NY 10036
      Telephone: (212) 382-4620
      Email: gloria@melwanichan.com

      *Attorneys for Plaintiff*